1  **Yuri Simpson, (SBN 183737)**
2  **Law Office of Yuri Simpson**
   **PO Box 16232**
3  **San Diego, CA 92176**
4  **619-762-1118**
   **yuri@simpsontcpalaw.com**
5  *Attorney for Plaintiff*
6  *and the Putative Class*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THANE CHARMAN, individual and **on behalf of all others similarly situated** <br><br> Plaintiff, <br><br> v. <br><br> ONYX COALE, an individual and John Doe, an unknown business entity <br><br> Defendants, | Civil Case No.: **'23CV1043 AGS BLM** <br><br> **CLASS ACTION COMPLAINT** <br><br> VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(b)] <br><br> VIOLATIONS UNLAWFUL PRONG OF CALIFORNIA UNFAIR COMPETITION LAW <br> Cal. Bus. & Prof. Code §17200 <br><br> JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

1. Plaintiff THANE CHARMAN ("Plaintiff") brings this Class Action

Complaint and Demand for Jury Trial against Defendant Onyx Coale ("COALE"),

COMPLAINT                                  1                          Case #: _____

and Defendant JOHN DOE ("John Doe" or together, "Defendants") to stop their illegal practice of making unauthorized calls that play prerecorded voice messages to the cellular telephones of consumers nationwide, and to obtain redress for all persons injured by their conduct. Plaintiff alleges as follows upon personal knowledge as to itself and its own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by its attorney.

## NATURE OF THE ACTION

2. Plaintiff brings this action individually and on behalf of all others similarly situated seeking damages and any other available legal or equitable remedies resulting from the illegal actions of COALE, in negligently, knowingly, and/or willfully contacting Plaintiff on Plaintiff's cellular telephone and leaving a precorded voicemail, without prior authorization, in violation of the Telephone Consumer Protection Act, *47. U.S.C. § 227 et seq*. ("TCPA") and related regulations, thereby invading Plaintiff's privacy.

3. Defendant COALE sells health and wells ness products. As a part of her sales efforts, Defendant and her agent John Doe placed thousands of calls employing a *prerecorded voice message* to cell phones and residential phones nationwide.

4. In 2013, the FCC required prior express written consent for all prerecorded voice calls ("robocalls") to wireless numbers. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. [] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service. []"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted) ("the FCC Letter").

5. Defendants had not received consent prior to placing these calls and, therefore, are in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

6. Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

7. Despite such strong legislation passed almost 30 years ago, the same problem persists.

8. To illustrate the scale of the problem facing America, it is estimated that there were over 47 billion robocalls placed in 2018, and 29 billion placed in just the first half of

2019.

9. Robocallers repeatedly and blatantly violate federal law with impunity because their calls are made anonymously. They are so hard to track down that they are rarely caught, so robocall volumes have continued to rise.

10. Most of the perpetrators are never identified because companies structure their business to keep their robocalling outsourced to third parties who offer a shield from scrutiny.

11. This strategy enables companies to accept the revenue generated by mass robocalling while arguing they don't even "make" phone calls.

12. The TCPA targets unauthorized, prerecorded calls exactly like the ones alleged in this case, based on Defendants' use of technological equipment to spam consumers with its advertising on a grand scale.

13. By placing the calls at issue, Defendants have violated the privacy and statutory rights of Plaintiff and the Class.

14. Plaintiff therefore seeks an injunction requiring Defendants to stop their unconsented calling, as well as an award of actual and statutory damages to the Class members, together with costs and reasonable attorneys' fees.

## PARTIES

15. Plaintiff THANE CHARMAN is a natural person and is a citizen of San Diego and resides in the Southern District of California.

16. Defendant COALE is an individual residing in the State of Florida with a place of residence at Casa Del Mar Condo 881 Ocean Dr Apt Th16, Key Biscayne, FL 33149-2600, and also 95625 Overseas Hwy, Key Largo, FL 33037-3810.

17. Defendant John Doe is an unknown business entity.

## JURISDICTION AND VENUE

18. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

19. Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to Plaintiff's claims occurred in this District. Additionally, Plaintiff's entered the jurisdiction in the form of telephonic communications so as to conduct business here.

## COMMON FACTUAL ALLEGATIONS

20. Defendant COALE sells both products and "opportunities" to get involved with a Multi-Level Marketing company selling health and wellness products. In the instant case, from the Lifewave LLC line of products, "affordable stem cells."

21. Defendant John Doe is an unknown business entity that generates sales leads via automated calling technology and prerecorded messages.

22. To increase her sales and avoid paying for legitimate forms of advertising,

COALE hired John Doe to market their company and produce inbound calls via telemarketing.

23. John Doe generated thousands of phone numbers from unknown sources that were believed to belong to individuals, but Defendants did not actually segregate out cellular and residential phones on the Do Not Call registry or get prior consent before calling and leaving prerecorded messages as would have been required for the calls to be (potentially) legal.

24. COALE failed to ensure that John Doe was not also calling residential and cellular phones and leaving prerecorded messages as prohibited by 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B).

25. When Plaintiff and the class answered the calls, they heard a prerecorded voice message.

26. When Plaintiff and the Class members listened to their messages expecting to hear from a real person, they instead heard a prerecorded voice message.

27. Defendants hoped that if enough people purchased their product as a result of the robocalls, it would justify the annoyance experienced by the recipients of the calls as the "cost of doing business."

28. Defendants did not possess consent from Plaintiff and the Class as required prior to deploying these prohibited messages.

## FACTS SPECIFIC TO PLAINTIFF THANE CHARMAN

29. On or around June 6, 2020 at approximately 12:59 pm, Plaintiff received a call from Defendant and/or its agent John Doe on Plaintiff's cell phone ending in 1119.

30. The Plaintiff's phone number is on the "Do Not Call" registry.

31. The caller ID displayed as (305) 609-5735.

32. Plaintiff answered and he heard a prerecorded voice.

33. The recorded message indicated, "Hi this is Onyx Coale…"

34. The voice informed Plaintiff that she was introducing a new product, "affordable stem cells," and wanted to give Plaintiff the "opportunity" to get involved with the Multi-Level Marketing.

35. Plaintiff never consented to receive calls from Defendants. Plaintiff had no relationship with Defendants and had never requested that Defendants contact Plaintiff in any manner, let alone by robocall.

## THEORIES OF LIABILITY AGAINST DEFENDANTS

36. Even if COALE did not personally initiate the TCPA-violating calls, COALE is liable if she took steps to cause the calls to be made, or if the calls were made pursuant to its actual or apparent authority, or ratification. Further, COALE is liable for participating in a joint enterprise or acting in concert with John Doe.

### DIRECT LIABILITY UNDER THE TCPA

37. Defendants' scheme involves the use of illegal robocalling to promote her

services.

38. John Doe has direct liability under the TCPA for calling Plaintiff's phone using an artificial or prerecorded voice.

39. COALE is also directly liable under the TCPA for outsourcing her telemarketing to John Doe.

40. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

## VICARIOUS / AGENCY LIABILITY

41. The May 2013 FCC Ruling rejected a narrow view of TCPA liability,

including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id*. at 6587 n. 107.

42. Prior to conducting discovery in this litigation, due to the anonymous nature of robocalling, Plaintiff has no way to identify the exact parties who called its phone. While the pre-recorded message says, "this is Onyx COALE," it could have been COALE or the as yet unidentified "John Doe."

43. However, for the purposes of TCPA liability, Plaintiff is not expected to know this information at the pleading stage.

44. The May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id*. at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id*. at 6593 (¶ 46).

**ACTUAL AUTHORITY**

45. Defendant COALE gave actual authority to John Doe to generate prospective customers.

46. COALE's integration of robocalling into her sales process was so seamless that it appeared to outside parties like Plaintiff that John Doe was the telemarketing department of COALE.

47. COALE acted in concert with John Doe and has been able to enjoy the benefits of mass robocalling while moving the illegal activity "outside their purview."

48. John Doe had actual authority to make robocalls to Plaintiff on behalf of COALE.

49. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

50. In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. §227(b)).

51. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

## APPARENT AUTHORITY

52. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.
> 28 FCC Rcd at 6592 (¶ 46).

53. Defendant COALE authorized John Doe to generate prospective customers for her.

54. The integration of COALE's sales efforts with robocalling by John Doe was so seamless that it appeared to Plaintiff that John Doe was one and the same company with COALE.

55. Plaintiff reasonably believed and relied on the fact that John Doe had received

permission and instructions from COALE to advertise the Multi-Level Marketing opportunity.

### RATIFICATION

56. Defendant COALE actively accepted business that originated through the illegal robocalls placed by John Doe.

57. By accepting a contract written with Plaintiff pursuant to a robocall, COALE "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of Defendant John Doe, as described in the Restatement (Third) of Agency.

58. COALE ratified John Doe's TCPA violations by knowingly accepting the benefit of Plaintiffs as new customers despite the fact that the way Plaintiffs were the victim of Defendants' illegal marketing scheme.

59. COALE ratified John Doe's TCPA violations by being willfully ignorant of the violations or by being aware that such knowledge was lacking.

60. The ratification by COALE caused John Doe to have actual authority under Restatement § 4.01 cmt. b.

### ACTING IN CONCERT

61. Defendants were part of a common design to robocall consumers and then sell COALE's offered products or "opportunities" to join a MLM scheme.

62. Defendant COALE had a tacit understanding that John Doe was robocalling in violation of the TCPA.

63. COALE knew that John Doe's conduct was a breach of duty to Plaintiff.

64. COALE gave John Doe substantial assistance in accomplishing the tortious result, including compensating John Doe for generating customers pursuant to robocalls and giving instructions on how to represent them and what to ask the people that had been robocalled.

65. COALE furthered the tortious conduct by her cooperation with John Doe and adopted John Doe's robocalling and solicitation for her own benefit.

66. COALE's own conduct constitutes a breach of duty to Plaintiff.

67. Plaintiff's injury is indivisible.

68. All Defendants acted tortiously and the harm resulted from the robocalling of John Doe.

69. COALE and John Doe are joint and severally liable for the resulting damage

## CLASS ALLEGATIONS

70. **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2) and/or 23(b)(3) on behalf of Plaintiff and a class and subclass defined as follows:

> **TCPA Class**. All persons in the United States who: (1) from the last 4 years to the filing of this complaint (2) received at least one telephone call; (3) on his or her cellular or residential telephone; (4) that used an artificial or prerecorded voice; (5) for the purpose of selling COALE's products or services; (6) where Defendants did not

have the recipient's express written consent prior to placing the calls.

**California Subclass**. All persons in California who: (1) from the last 4 years to the filing of this complaint (2) received at least one telephone call; (3) on his or her telephone; (4) that used a prerecorded voice; (5) for the purpose of selling COALE's services; (6) where Defendants did not have prior express written consent to place such call at the time it was made.

71. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

72. **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiff, but it is clear that individual joinder is impracticable. On information and belief, Defendants placed telephone calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendants' records.

73. **Typicality**: Plaintiff's claims are typical of the claims of other members of

the Class, in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited telephone calls.

74. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

75. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinge on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

76. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over

any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    i. Whether Defendants placed phone calls to Plaintiff and the putative class.

    ii. Whether the phone calls played an artificial or prerecorded voice.

    iii. Whether Defendants possessed express written consent prior to calling Plaintiff and the members of the Class.

    iv. Whether Defendants' conduct was *willing* or *knowing* under the TCPA.

    v. Whether members of the Class are entitled to treble damages based on the knowingness or willfulness of Defendants' conduct.

77. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this

Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION
Telephone Consumer Protection Act
Violation of 47 U.S.C. § 227(b)
(On behalf of Plaintiff and the TCPA Class)

78. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

79. John Doe placed telephone calls to Plaintiff's and the Class members' cellular and/or residential telephones without having their prior express written consent to do so.

80. The calls were made for the express purpose of soliciting customers for COALE's sales of "affordable stem cells," and opportunities to join her in a Multi-Level Marketing endeavor.

80. When Plaintiff and the Class answered, the calls played an artificial or prerecorded voice message to their cellular and/or residential phones as proscribed by 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B).

81. As a result of its unlawful conduct, Defendants repeatedly invaded Plaintiff's and the Class's personal privacy, causing them to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling them to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop their illegal calling campaign.

82. Defendants and/or its agent made the violating calls "*willfully*" and/or

"*knowingly*" under 47 U.S.C. § 227(b)(3)(C).

83. If the court finds that Defendants *willfully* and/or *knowingly* violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

**SECOND CAUSE OF ACTION**
Unlawful Prong of California Unfair Competition Law
Cal. Bus. & Prof. Code §17200
(on behalf of Plaintiff and the California Class)

84. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

85. The unlawful prong of California Business and Professions Code §17200 prohibits any unlawful business practice.

86. Each of Defendants' violations of 47 U.S.C. § 227(b) and Cal. Civ. Code §1770(a)(22)(A) vis a vis Plaintiff as described herein all constitute separate and cumulative violations of unlawful prong of §17200.

87. Plaintiff has incurred actual damages in the form of annoyance, wasted time, wasted cell phone battery, and for the cost of postage to mail Defendants a complaint letter.

88. Plaintiff is authorized to pursue a private right of action against Defendants under §17204.

89. Plaintiff is entitled to injunctive relief and restitution.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff THANE CHARMAN, individually and on behalf of the Class, prays for the following relief:

A. An order certifying the Class as defined above, appointing Plaintiff THANE CHARMAN as the Class representative and appointing Plaintiff's counsel as

B. An order declaring that Defendants' actions, as set out above, violate 47 U.S.C. § 227(b) of the TCPA;

C. An order declaring that Defendants' actions, as set out above, violate the TCPA *willfully* and *knowingly*;

D. An order declaring that Defendants' actions, as set out above, violate the unlawful prong of Cal. Cal. Bus. & Prof. Code § 17200;

E. An injunction requiring Defendants to cease all unlawful calls without first obtaining the call recipient's express written consent to receive such calls, and otherwise protecting interests of the Class;

F. An award of statutory damages;

G. An award of attorney's fees and costs pursuant to Cal. Civ. Proc. Code § 1021.5; and

H. Such other and further relief that the Court deems reasonable and just.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Dated: June 1, 2023         Respectfully submitted,

By: s/ Yuri Simpson
Yuri Simpson
**Counsel for Plaintiff and Putative Class**